JS 44  (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LENTO LAW GROUP PC

**DEFENDANTS**

ANTONINO ABATE and MARTHA ABATE

**(b)** County of Residence of First Listed Plaintiff    Camden
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Arizona
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lawrence A. Katz
1814 RT 70 STE 321
Cherry Hill  NJ 08003 856-652-2000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Product Liability | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 usc sec 1332

Brief description of cause:
Defendants defrauded and breached their fiduciary duty with plaintiff.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
Excess $150,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
12-31-2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

**In The**

**UNITED STATES DISTRICT COURT**

**For The**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LENTO LAW GROUP, PC**<br>**1814 RT 70 STE 321**<br>**Cherry Hill , NJ 08003**<br><br>- **Vs –**<br><br>**ANTONINO ABATE**<br>**222 N. 17th Avenue**<br>**Phoenix, AZ 85007**<br><br>**And**<br><br>**MARTHA ABATE**<br>**222 N. 17th Avenue**<br>**Phoenix, AZ 85007** | **Case No. _____**<br><br><br><br>**JURY TRIAL DEMANDED** |

## C O M P L A I N T

LENTO LAW GROUP, by and through its counsel, Lawrence A. Katz, Esquire, brings this lawsuit against ANTONINO ABATE and MARTHA ABATE, and seeks money damages for an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00):

The Parties

1.      Plaintiff, LENTO LAW GROUP, PC, is a corporation and law firm organized and existing under the laws of the State of New Jersey, with its principal place of business located at 1814 RT 70 STE 321, Cherry Hill , NJ 08003.

2.      Defendant, ANTONINO ABATE (Abate), is a citizen of the State of Arizona, with a regular place of business or residence located at 222 N. 17th Avenue, Phoenix, AZ 85007.

3.      Defendant, MARTHA ABATE, is a citizen of the State of Arizona, with a regular place of business or residence located at 222 N. 17th Avenue, Phoenix, AZ 85007.

4.      At all times material hereto, the defendants were the agents, servants, workmen, and/or employees of each other, acting within the course and scope of their agency or other relationship with each other.

Jurisdiction

5.      Jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332, in that the plaintiff is a New Jersey citizen and the defendants are both Arizona citizens, and that amount in controversy (exclusive of costs and interest) is in excess of Seventy-Five Thousand Dollars ($75,000.00).

Venue

6.     Venue in the District of New Jersey is proper because a substantial part of the events or omissions giving rise to the claims involved in this lawsuit occurred in New Jersey.

7.     In particular, one or more of the conversations resulting in the initial relationship between plaintiff's officers and managers and defendant-Abate occurred in New Jersey, involved telephone and other electronic communications with at least one party in New Jersey, and involved mail, wire, email, and fax communications with at least one party in New Jersey.

8.     Additionally, the clients involved in this lawsuit were clients of a New Jersey law firm and relied upon the New Jersey law firm  for their representation.

**9.**     Furthermore, the defendants engaged in a calculated, intentional, and well-planned attack to deceive the plaintiff, a New Jersey corporation, and engage in systematic theft of its clients, assets, and resources.

The Underlying Facts

10.     At all times material hereto, John Groff was and is the national firm administrator for the plaintiff.

11.     At all times material hereto, John Groff was authorized to open firm offices around the nation and to hire counsel to represent the firm and become employed by the firm.

12.     At all times material hereto, John Groff had the authority to enter into contracts and agreements pertaining to the plaintiff and its relationships with others.

13.     At all times material hereto, Antonino Abate (Abate) was an attorney licensed to practice in the State of Arizona.

14.     At all times material hereto, Abate owned, operated, controlled, and conducted his legal business under the name Law Office of Nino Abate, PLC.

15.     On or about May 27, 2024, Groff signed a contract for legal services and retained Abate to represent the plaintiff in a variety of business matters.

16.     On May 28, 2024, plaintiff paid Abate a retainer of $3,500.00 pursuant to the aforementioned contract for legal services.

17.     At all times material hereto, David Haislip was the plaintiff's controller or other financial officer or employee.

18.     Prior to retaining Abate, Attorney C. Randall Stone had been the Managing Attorney of plaintiff's Arizona office.

19.     The plaintiff became concerned about Stone's operation of the Arizona office and one of the reasons for retaining Abate was to review and render opinions concerning Stone and his operation of the Arizona office.

20.     On June 6, 2024, Haislip transmitted to Abate several documents, including copies of resolutions, by laws, and managing attorney agreements, as well

as documents related to Stone's operation of the Arizona office, to review and for Abate to render his opinion concerning.

21.    On June 21, 2024, Haislip sent a copy of the plaintiff's Arizona office lease to Abate for him to review and render his opinion concerning.

22.    On July 19, 2024, after Abate rendered his opinion that certain conduct by Stone was improper and rendered him liable to plaintiff for damages, Groff instructed Abate to prepare and file a lawsuit against Stone.

23.    On July 27, 2024, Abate sent a cease-and-desist notice to Stone.

24.    After discovering the problems with Stone, plaintiff hired Peter Sayegh to function as its Arizona  lawyer.  Unlike Abate, who represented the plaintiff, like Stone, Sayegh was to work for the plaintiff in Arizona and represent plaintiff's clients.

25.    Unfortunately, the relationship with Sayegh quickly deteriorated and he was discharged by plaintiff.

26.    Therefore, on August 2, 2024, Haislip emailed Abate, and in his capacity as plaintiff's retained attorney, asked Abate to assist with terminating Sayegh, and Abate drafted and sent a notice of termination letter to Sayegh.

27.    As a result of Abate's representation of plaintiff, he had privileged and confidential information about plaintiff's Arizona office, its finances, the clients

represented through the office, the mismanagement and other problems related to Stone, and the difficulty the plaintiff had in maintaining and operating said office.

28.    On August 4, 2024, using the privileged and confidential information that he obtained during his representation of plaintiff with regard to its Arizona office, Abate suggested that he could both represent plaintiff as one of his clients, and also serve as the interim Managing Attorney of plaintiff's Arizona office.

29.    As a result of Abate's suggestion that he could serve as both plaintiff's retained counsel and as the Managing Attorney of the Arizona office, Groff and Haislip travelled to Arizona several times to meet with Abate, establish for Abate an email account and telephone number with the plaintiff, establish an office from where Abate would function as one of the plaintiff's attorneys who represented plaintiff's clients, and related matters.

30.    On October 1, 2024, Abate suggested that he become the full-time Managing Attorney for plaintiff's Arizona office, while still representing plaintiff in business matters.

31.    In this now intermingled role as plaintiff's attorney for Arizona related business and other matters, as well as the Managing Attorney of plaintiff's Arizona office, Abate had plaintiff purchase a subscription to estate planning software (asserting that he could develop an estate planning practice for the plaintiff), made

recommendations and rendered opinions on plaintiff's compliance with Alternate Business Structures (ABS), and other matters.

32.    In mid-October 2024, Abate represented to Groff and Haislip that he was in the process of drafting the complaint against Stone which he was instructed to draft in July 2024.

33.    At the same time, Abate was assisting the plaintiff with locating a Utah barred attorney to represent the plaintiff's Utah clients.

34.    As a result of serving of plaintiff's retained attorney for business related matters in Arizona, and simultaneously serving as the Managing Attorney for plaintiff's Arizona office, Abate acquired privileged and confidential information about plaintiff's business practices, client acquisition methods, the Arizona office, its finances, the clients represented through the office, the mismanagement and other problems related to Stone, and the difficulty the plaintiff had in maintaining and operating said office.

35.    Abate, recognizing the serious issues that plaintiff had with its Arizona office, and the representing of its Arizona clients, leveraged this knowledge, and on October 9, 2024, essentially gave the plaintiff an ultimatum:  take Haislip and Groff off the Lento Arizona corporate entity documents and put Abate on alone, or Abate would withdraw as plaintiff's Arizona Managing Attorney.

36.    Because of the issues created by Stone's departure, and the need to have an Arizona attorney to represent plaintiff's Arizona clients, plaintiff reluctantly agreed to the coercion.

37.    On or about October 9, 2024, a resolution was signed and the changes demanded by Abate were made to the Arizona Corporation Registration Records.

38.    In October 2024, plaintiff became aware that Abate was not fulfilling his professional and ethical duties to plaintiff and its Arizona clients:

    a.    On or about October 21, 2024, an audit of the Arizona cases as well as communication from clients, caused plaintiff to realize that the plaintiff's clients' cases were not being properly overseen by Abate, and in several cases, were being completely ignored.

    b.    On November 5, 2024, Abate refused to give plaintiff's Arizona employee Faraj a key to the Arizona office so he could open up the office on his own and access the plaintiff's chattel within the office.

    c.    Abate began discussions with Tina May concerning his representation of her in a New Jersey property issue matter, even though Abate was not licensed to practice law in New Jersey and had no knowledge of New Jersey law.

39.    Similarly, Abate was not properly representing plaintiff in the matters for which he had been retained:

a. In November 2024, even though he had been instructed to prepare and file a complaint against Stone in June-July 2024, Abate had still not finalized and filed the complaint and other documents against Stone.

b. In November 2024, Abate had still not finalized arrangements to enable plaintiff to employ at Utah barred attorney.

c. Abate had not fulfilled his project of obtaining a Utah counsel and entering into an employment agreement with that attorney.

40.    Plaintiff, through Groff, expressed its concern that Abate had neither been fulfilling his obligations as plaintiff's retained counsel nor as the Managing Attorney for plaintiff's Arizona office.

41.    Abate suddenly resigned as plaintiff's Arizona Managing Attorney.

42.    On December 12, 2024, Abate unilaterally sent an email to plaintiff's clients that he is no longer the Managing Attorney of plaintiff's Arizona office.

43.    On that same date, he sent an email to the plaintiff demanding pay from plaintiff.

44.    On December 13, 2024, Abate filed motions to withdraw from several of plaintiff's Arizona cases, leaving its Arizona clients without counsel.

45.    On December 26, 2024, Groff sent Abate a preservation letter and malpractice insurance notice.

46.    In response to this, Abate contacted Groff and issued various threats. During these conversations, Abate represented that his wife, defendant Martha Abate, was aware of Abate's improper actions and was encouraging and/or assisting him to take them.

47.    On December 27, 2024, Abate informed Groff that Abate had changed plaintiff's bank accounts even though he lacked the permission or legal authority to do so.

48.    As a result of the acts and omissions of Abate, as encouraged and/or assisted by Martha Abate, the following has occurred:

    a.  Abate has failed to pursue legal remedies against Stone as he should have as plaintiff's retained counsel.

    b.  Abate used privileged and confidential information about plaintiff's law firm and client acquisition methods, plaintiff's Arizona office, its finances, the clients represented through the office, the mismanagement and other problems related to Stone, and the difficulty the plaintiff had in maintaining and operating said office to insert himself as plaintiff's Arizona Managing Attorney, and then, to cause plaintiff to change the corporate documents effectively giving Abate control over the corporation and its finances.

    c.  Abate illegally, improperly, and unethically gave himself control over the plaintiff's Arizona bank accounts.

    d.  Abate failed to properly represent the plaintiff's Arizona clients, failed to advance their legal matters, and then abruptly withdrew as their counsel leaving those clients with no representation.

    e.  Abate has caused plaintiff's Arizona clients to lose confidence in the firm and its ability to represent them.

    f.  Abate damaged the plaintiff's reputation.

49.   As a result of the improper, unethical, and illegal conduct discussed above, Abate was the direct, factual, and proximate cause of damages to the plaintiff.

50.   These damages include, but are not limited to:

    a.  Refunds and anticipated refunds to Arizona clients because of Abate's abandonment of them and improper representation of them totaling $85,000.00.

    b.  Plaintiff's malpractice exposure to Arizona clients as a result of Abate's abandonment of them and improper representation of them for an amount not less than $100,000.00.

    c.  Expenses related to establishing Abate as the Arizona Managing Attorney, providing requested software, etc. for a sum of $37,200.00.

      d.  Payments to Abate for retained legal services that were not provided for a sum in excess of $10,000.00.

51.  Each of the paragraphs above are incorporated into each and every of the following Counts as if set forth therein.

### <u>COUNT I:  BREACH OF FIDUCIARY RELATIONSHIP</u>

52.  "To breach a fiduciary duty, an attorney must put his or her own interests or the interests of another before the interests of a client. See Weil, Gotshal & Manges, LLP, v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 780 N.Y.S.2d 593, 595-96 (A.D. 2004); see also Trousdale v. Henry, 261 S.W.3d 221, 227 (Tex. App. 2008) (stating a breach of fiduciary duty claim "requires allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action") (emphasis added).  *Atkins v. Snell & Wilmer LLP*, No. 1 CA-CV 17-0519, 2018 Ariz. App. Unpub. LEXIS 1479, at *21-22 (Ct. App. Oct. 16, 2018).

53.  Abate put his own interests before those of his client, the plaintiff.

54.  Abate deliberately did not disclose that he was under investigation for unethical and/or improper conduct and, in failing to do so, put his own interests ahead of the plaintiff.

55.  Abate used the privileged and confidential information about plaintiff's Arizona office, its finances, the clients represented through the office, the

mismanagement and other problems related to Stone, and the difficulty the plaintiff had in maintaining and operating said office to influence and/or lure and/or coerce plaintiff into hiring him as its Arizona Managing Attorney, changing the Arizona corporation documents, and changing the Arizona bank accounts.

56.    As a result of its breach of the fiduciary relationship between Abate and its client, the plaintiff, plaintiff sustained the damages previously set forth.

## COUNT II: FRAUD

57.    "When a party intentionally or by design misrepresents a material fact or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage over him, there is a fraud." *Mobil Oil Co. v. Frisbie*, 485 P.2d 280, 287 (Ariz. Ct. App. 1971).

58.    Abate intentionally and by design misrepresented to plaintiff that he was qualified to serve as the plaintiff's Arizona Managing Attorney even though he was subject to an ethical investigation and had no experience in the types of cases he would oversee for the plaintiff's Arizona clients.

59.    Abate further intentionally and by design misrepresented to plaintiff that he would properly, professionally,  and enthusiastically represent the plaintiff's Arizona clients and act in the best interests of the plaintiff.

60.    In fact, Abate consistently failed to properly represent the plaintiff's Arizona clients and acted in such a manner as to tarnish the plaintiff's reputation.

61.    Furthermore, Abate intentionally and by design misrepresented to plaintiff his design to take corporate and financial control of the plaintiff's Arizona office for his own financial and other benefits.

62.    As a result of Abate's fraud, plaintiff sustained the damages previously set forth.

## COUNT III: MISREPRESENTATION

63.    "A misrepresentation is material if a reasonable person 'would attach importance to its existence or nonexistence in determining [his or her] choice of action in the transaction in question.'" *Sitton v. Deutsche Bank Nat'l Tr. Co*., 311 P.3d 237, 243 (Ariz. Ct. App. 2013).

64.    Abate made material misrepresentations to the plaintiff.

65.    Abate misrepresented his ability to manage the plaintiff's Arizona office, his ability to represent plaintiff's clients properly and effectively in the matters for which they retained the plaintiff, and his ability to properly represent the plaintiff against Stone.

66.    Had Abate been truthful to the plaintiff, and disclosed that he was under ethical investigations, plaintiff would not have hired him as the Arizona Managing Attorney.

67. Had Abate not misrepresented his abilities, plaintiff would not have felt coerced to change corporate documents and expend the monies associated with Abate's position as Arizona Managing Attorney.

68. As a result of Abate's misrepresentation, plaintiff sustained the damages previously set forth.

## COUNT IV:  THEFT

69. "A person commits theft within the meaning of the above statute if: (1) without lawful authority, he knowingly controls property in which another has an interest; and (2) he acts with the intent to deprive the other person of such property." *State v. Yarbrough*, 638 P.2d 737, 739 (Ariz. Ct. App. 1981).

70. Without authorization, Abate changed the plaintiff's Arizona bank accounts to place himself on the account so that he could control the money in said accounts.

71. Furthermore, Abate coerced the plaintiff into changing the corporate documents so that only his name appeared on them to control the corporate assets and deprive plaintiff of them.

72. As a result of Abate's theft, plaintiff sustained the damages previously set forth.

## COUNT V:  CONVERSION

73.    Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

74.    By refusing to provide a key to the Arizona office at plaintiff's other personnel, Abate seriously interfered with plaintiff's right to control the office and chattel within the office.

75.    As a result of this interference, plaintiff was required to accept Abate's demands in order to gain access to the office and chattel.

76.    As a result of Abate's conversion, plaintiff sustained the damages previously set forth.

## COUNT VI: BREACH OF CONTRACT

77.    On May 27, 2024, plaintiff retained Abate to represent it in a variety of legal matters in Arizona, including reviewing legal documents concerning the operation of its Arizona office and pursuing legal remedies against Stone.

78.    However, Abate failed to do so.

79.    Abate failed to pursue damages against Stone for his inappropriate actions while plaintiff's Arizona Managing Attorney.

80.    To date, Abate has still not properly pursued legal actions against Stone to recover the damages he caused the plaintiff.

81.    Furthermore, Abate engaged in an employment contract with the plaintiff whereby Abate would serve as plaintiff's Arizona Managing Attorney, and it that capacity, to represent plaintiff's interests in Arizona, promote plaintiff's reputation and good name in Arizona, and properly and professionally represent plaintiff's Arizona clients.

82.    However, Abate failed to  do so.

83.    Abate failed to represent plaintiff's Arizona clients properly or professionally, and as a result of this failure, has damaged the plaintiff's reputation in Arizona and nationwide.

84.    Abate also failed in his contractual obligation to  organize the Arizona office so it would operate in a professional and efficient manner.

85.    As a result of Abate's breach of both the contract where plaintiff retained him as its own counsel and the contract where Abate was hired as plaintiff's Arizona Managing Attorney, plaintiff sustained the damages previously set forth.

## COUNT VII:  INTERFERENCE WITH A BUSINESS RELATIONSHIP

86.  "A prima facie case of intentional interference requires: (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant

damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly" *Safeway Ins. Co. v. Guerrero*, 83 P.3d 560, 564 (Ariz. Ct. App. 2004).

87. Abate recognized that plaintiff had contractual relationships with its Arizona clients.

88. In corresponding with plaintiff's Arizona clients, after Abate had terminated his relationship with the plaintiff, Abate sought to induce the plaintiff's clients to change their representation from plaintiff to Abate.

89. Furthermore, it is believed that Abate weaseled himself into the position of plaintiff's Arizona Managing Attorney for the sole purpose of identifying the plaintiff's clients and absconding with them once he separated from the plaintiff's firm.

90.    As a result of Abate's intentional interference with the contractual relationship between plaintiff and its Arizona clients, plaintiff sustained the damages previously set forth.

## COUNT VIII:  BREACH OF COVENANT
## OF GOOD FAITH AND FAIR DEALING

91. The law implies a covenant of good faith and fair dealing in every contract," which is a duty that "arises by virtue of a contractual relationship." Rawlings v. Apodaca, 151 Ariz. covenant of good faith and fair dealing "The essence of that duty is that neither party will act to impair the right of the other to receive the

benefits which flow from their agreement or contractual relationship." Id. "The covenant of good faith and fair dealing may be breached even though the express covenants of the contract are fully performed. *Cavallo v. Phx. Health Plans, Inc*., 518 P.3d 759, 764 (Ariz. 2022).

92.  Abate breached his covenant of good faith and fair dealing.

93.  Abate used the privileged and confidential information about plaintiff's Arizona office, its finances, the clients represented through the office, the mismanagement and other problems related to Stone, and the difficulty the plaintiff had in maintaining and operating said office, which Abate obtained during his representation of plaintiff, to weasel itself into the position of plaintiff's Arizona Managing Attorney.

94. In so doing, Abate abused the contract for him to represent the plaintiff and misused the confidential information obtained during that contractual relationship to leverage himself into a position where plaintiff felt he had no choice but to hire Abate as the Arizona Managing Attorney, and then, to change the corporate documents as Abate demanded.

95. Abate also breached his covenant of good faith and fair dealing by accepting the position of plaintiff's Arizona Managing Attorney despite having no intention to efficiently and properly manage the Arizona office and despite having

no intention of properly, ethically, and professionally representing plaintiff's Arizona clients.

96. On the contrary, rather than engaging in good faith and fair dealings, Abate used his privileged and special knowledge to attempt to lure the plaintiff's Arizona clients and damage plaintiff's reputation.

97.    As a result of Abate's breach of his covenant of good faith and fair dealing, plaintiff sustained the damages previously set forth.

## COUNT IX:  CONSPIRACY

98.    Defendants, Antonino Abate and Martha Abate, planned and executed the actions and inactions set forth in all of the previous paragraph with the intent of infiltrating Abate into the plaintiff's Arizona business, having Abate control the Arizona business, and having Abate attempt to lure plaintiff's Arizona clients to himself.

99.    Upon information and belief, Martha Abate influenced, encouraged, and helped Antonino Abate plan and execute this illegal, unethical, and unprofessional conduct.

100.  As a result of the defendants' conspiracy, plaintiff sustained the damages previously set forth.

WHEREFORE, plaintiff demands judgments against the defendants, jointly and severally, for a sum in excess of $150,000.00, and such other relief as may be deemed appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated:  December 31, 2024        **LENTO LAW GROUP, P.C.**


_BY:  s/ Lawrence A. Katz, Esq._
LAWRENCE A KATZ
Counsel for Plaintiff
NJ State Bar No. . 027051988
(Office) 856.652.2000 x479
856.375.1010 (Fax)
lakatz@lentolawgroup.com